RECEIVED
JAN - 7 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JEFFREY D. HUNKIN and<br>KIMBERLY M. HUNKIN | CIVIL ACTION NO. 08-456 |
| VERSUS | JUDGE DOHERTY |
| COOPER/T. SMITH STEVEDORING<br>COMPANY, INC., ET AL | MAGISTRATE JUDGE HILL |

## RULING ON APPEAL

Currently pending before the Court is an Appeal by defendant, Cooper/T. Smith Stevedoring Company, Inc. ("Cooper"), of a Discovery Ruling issued by the Magistrate Judge in this matter.[1] [Doc. 58] In the appeal, Cooper seeks to set aside the Magistrate Judge's Ruling, which granted plaintiff's motion to compel production of the recorded, unsworn statements of defendant's crane operator and two utility men, taken by defense attorney, Frederick Swaim, on the day of plaintiff's accident. [Doc. 57, p.1; Doc. 58, p.1] Defendant asserts the Ruling is clearly erroneous and contrary to law on the following grounds:

> I) plaintiff's failed to show substantial need and the inability to discover the substantial equivalent by other means without undue hardship, ii) the witness statements are opinion work product that require stringent protection, and iii) Cooper did not waive attorney/client privilege, which is applicable to the statements.

[Doc. 58, p.1]

---

[1] The Appeal has been captioned by defendant as "Objections to the Magistrate Judge's Ruling and Order for Stay of Enforcement." [Doc. 58] The caption is a bit confusing, in that defendant is actually moving this Court to stay enforcement of the Magistrate Judge's Ruling; defendant does not object to an Order for Stay of Enforcement issued by the Magistrate Judge, as the caption would lead one to believe.

1

## Standard of Review

A magistrate judge's order on a nondispositive matter should be reversed or set aside "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* FED. R. CIV. P. 72(a); LR 74.1W(A).

## Applicable Law

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." *Hodges, Grant, & Kaufman v. United States*, 768 F.2d 719, 720 (5th Cir.1985). "The purpose of the privilege is to encourage clients to make full disclosure to their attorneys." *Fisher v. U.S.*, 425 U.S. 391, 403 (1976). The privilege additionally protects communications from the lawyer to his client, if the lawyer's communications would tend to disclose the client's confidential communications. *Id.* The attorney-client privilege can also extend to communications between corporate employees and counsel, if the communication is made at the direction of corporate superiors in order to secure legal advice, and the employees are aware that they are being questioned so that the corporation can obtain legal advice. *Upjohn Co. v. United States*, 101 S.Ct. 677, 685 (1981). "The burden of demonstrating the applicability of the privilege rests on the party who invokes it." *Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir.1985).

"The work product doctrine, first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), was codified in 1970 as Federal Rule of Civil Procedure 26(b)(3)." *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514, n.2 (5th Cir.1993). Whereas the attorney-client privilege exists to protect confidential communications between a lawyer and his client, the work product doctrine does not; rather, the work product doctrine exists "to promote the adversary system

by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). The rule provides: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). However, an exception to the protected status of work product exists where the materials would otherwise be discoverable under Rule 26(b)(1) (*i.e.* the materials are not privileged and are relevant to a claim or defense), and the party seeking the materials can show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(i) and (ii). Furthermore, "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation." *Id.* at (b)(3)(B).

The work product doctrine protects two categories of materials: ordinary work product and opinion work product. *See e.g., In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1240 (5th Cir. 1982); *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, 242 F.R.D. 357, 360 (E.D.Tex. 2007); 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2026 (2d ed. 2009). If the materials are ordinary work product, a court may compel discovery if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3); *In re Int'l Systems & Controls Corp. Sec. Litig.* at 1240. Thus, if a party can procure the information sought through other avenues, such as

depositions, then undue hardship has not been shown. *Id.*[2] "A party may demonstrate undue hardship if a witness cannot recall the events in question, or is unavailable for deposition; however, broad unsubstantiated assertions of unavailability or faulty memory are insufficient to show undue hardship." *Id.* Opinion work product on the other hand is afforded a higher degree of protection than ordinary work product. Wright et al, *supra*, at § 2026. The "special protection" afforded opinion work product is found in FED. R. CIV. P. 26(b)(3)(B), which provides: "If the court orders discovery of those [work product] materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Finally, "The burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." *Hodges*, 768 F.2d at 721.

## Analysis

As previously noted, defendant's first assignment of error is that "plaintiff's failed to show substantial need and the inability to discover the substantial equivalent by other means without undue hardship." The pertinent portions of the Magistrate Judge's Ruling with regard to this assignment of error read as follows:

> The accident at issue in this litigation occurred on March 31, 2008. That same date, defense counsel was asked to interview the crane operator (Morin) and utility men (Clements and Meunier) and obtain their unsworn recorded statements. Suit was filed two days later.
>
> The accident occurred when the crew of four (Morin, Clements, Meunier and Hunkin) were offloading materials from a ship to empty barges, utilizing a crane

---

[2]This is so, because work product immunity protects only certain "documents and tangible things," but not the facts underlying the creation of those documents or tangible things. *See e.g., In re International Systems & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir.1982).

which is mounted on a derrick barge. The plaintiff was injured when the crew were shifting a loaded barge into another position.

Plaintiff's counsel deposed the crane operator and two utility men on February 11, 2009. During the depositions of Clements and Meunier both testified that they objected to the procedures used by Hunkin to shift the barge as they were unsafe. Thereafter, on March 5, 2009, the deposition of the loss control director (safety man), Byron Borne, was taken. During Borne's deposition, plaintiff's counsel learned that, in an interview with Borne before Clements and Meunier gave their unsworn recorded statements to counsel, neither indicated that plaintiff was responsible for the accident.

Moreover, in their depositions, the deponents were unable to remember important details relating to the facts of the accident, purportedly as a result of the lapse of time between the accident and the date of deposition. For example, the proper procedure for bringing in and removing barges is different depending on whether one or two tugs is involved. However, Morin was not sure if they were using one or two tugs on the day of the accident, Meunier testified that there were two tugs and Clements, after he initially testified that there were two tugs, later stated that he was not sure.

Their testimony also differed as to whether they had already moved a full barge that day, and whether there was another barge waiting to come in when the swap in which plaintiff was injured occurred, facts which are also relevant to the procedure which should have been employed that date. Clements testified it was the first barge loaded that date and that there were no barges coming in, Morin didn't know if it was the first barge loaded and didn't know if another barge was waiting to come in, and Meunier testified that it was not the first barge moved out that morning.

For these reasons, plaintiff asserts that the unsworn recorded statements of these eyewitnesses to the accident should be produced, as the statements were taken on the date of the accident when the facts were fresh in the witnesses' minds, so that the true facts surrounding the plaintiff's accident may be discovered. Plaintiff further asserts that because this case will be tried as a bench trial, there is little danger that minor discrepancies which may be contained in these statements will prejudice the defense.

...

Based on the circumstances presented herein, the law applicable to this case, and the specific requirements of Fed.R.Civ.P. 26(b)(3), the undersigned finds that the plaintiff has satisfied his burden of showing a substantial need and the inability to

discover the substantial equivalent of the factual information contained in the unsworn recorded statements by other means without undue hardship. Thorough review of the depositions taken in this case reveals that the eyewitnesses were unable to provide the plaintiff with basic facts surrounding the plaintiff's accident, and convinces the undersigned that without this factual information, the plaintiff cannot adequately prepare his case. These factual details were certainly fresh in each eyewitnesses' mind at the time the recorded statements were taken, may be obtained from these witnesses at this stage of the litigation only through production of the statements themselves.

Moreover, given that this case will be tried to the bench, there is little prejudice which may result as a result of the production; the court will not be easily swayed by any minor discrepancies between the facts contained in the statements and the facts each witness disclosed by deposition. Furthermore, while the plaintiff has knowledge of these facts, he should not be forced to trial without having been able to discover the facts to which the witnesses may testify based on their prior unsworn recorded statements.

Finally, it is unlikely that the statements contain or will reveal any mental impressions, conclusions, opinions or legal theories of defense counsel concerning the litigation, as it would appear that the attorney's task, at the time the statements were taken, was merely to obtain the facts of the accident, so that an appropriate legal theory or defense could be later formulated. Accordingly, the unsworn recorded statements shall be ordered produced in this case.

[Doc. 57, pp. 1-3; 5-6]

Defendant argues the ruling is clearly erroneous and contrary to law due to the following: "In the instant case, no key witness or participant is dead or otherwise unavailable"; "[t]he plaintiffs' argument that the witnesses have failed to remember some 'important issues' during their depositions is the result of the questions asked, not the witnesses' lack of memory on the subject"; "plaintiff's make no showing that the witnesses' present recollection of the relevant facts is less than that of March 31, 2008"; and "the Magistrate Judge should have ordered an in camera inspection of the witness statements to decide whether or not to order production of the statement." [Doc. 58-2, pp. 7, 8]

6

First, there is no requirement that the witness be "dead or otherwise unavailable" prior to obtaining his statement made at the time of the accident.[3] Rather, the party seeking the materials must demonstrate "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3).

Second, as to defendant's arguments the witnesses' lack of memory during their depositions is the result of the "questions asked" by deposing counsel, and that plaintiff's have failed to show the witnesses' present recollection of the relevant facts has diminished since the day of the accident (when they provided written statements), the Court finds even a cursory review of the depositions at issue reveals otherwise. For example, at the deposition of Marcus Meunier, the witness testified as follows:

> Q. So as we sit here today, is it true you don't remember the name of the vessel that y'all were offloading?
> A. No , sir. I don't remember.
> Q. And you don't remember what you were taking off?
> A. No, sir.

---

[3]It appears this concept may have been taken from *American River Transp. Co. v. M/V BOW LION*, 2005 WL 144777, *2 (E.D.La.), which found the party seeking discovery of work product had failed to show a substantial need for the materials, and then stated, "No key witness or participant is dead or otherwise unavailable." However, the Court next noted:

> Witnesses are available for deposition and some have been deposed. *If in light of the substance of the witnesses' deposition testimony (for example, if they cannot recall certain events or state that they must refer or defer to their written statements), defendants may hereafter become able to demonstrate to the court with some specificity just why they expect the witnesses' statements to supply information that their depositions did not, they can move again to compel the statements.* The court can then review the statements in camera and compare them to the deposition testimony to determine whether the statements are, or are not, the substantial equivalent of the deposition testimony.

(Emphasis added)

7

>   ...
>   Q. Do you remember when you got there, if there was a barge that was rigged to the derrick barge?
>   A. No. I can't remember.

[Doc. 49-4, pp. 23-4]

>   Q. Who told you that [there would be a two-boat stop rather than a one-boat swap], though. You don't know which one?
>   A. No. I can't remember.
>   Q. Did you know back then?
>   A. Yeah. Well, it was the same day that the incident happened. I'm sure I'm going to remember that.
>   Q. And the statement that you gave, you told the attorney who told you that?
>   A. I don't remember what I said that day in the statement.

[Doc. 49-6, p. 65]

>   Q. And what did he [Neil Morin] say?
>   A. And - - I don't really remember what all he said. He don't - - he's another one like Jeff. He don't talk much.
>   Q. Okay.
>   A. I don't remember quite what he said.
>   Q. Do you remember anything that he said?
>   A. No.
>   Q. Do you remember if he agreed with you [that plaintiff was using unsafe procedures]?
>   A. No.
>   Q. Do you remember if he disagreed with you?
>   A. No.

[Doc. 49-7, pp. 97-98]

>   Q. After the incident, did you talk with Neil about it?
>   ...
>   A. No. Not that I recall.
>   ...
>   Q. When you gave a statement, did you talk about it [a cable being rusty] in your statement?
>   A. I don't remember.
>   Q. Did you tell it to the safety man for Cooper?
>   A. I don't remember.

8

[Doc. 49-7, pp. 109-110]

    Mr. Neil Morin testified at his deposition as follows:

    Q. All right. So on the day of the accident, you don't remember what the barge was like when you got there; right?
    ...
    A. Naw. It might have been the second or third barge we loaded.
    Q. And it might not even been a barge there?
    A. Yeah.

[Doc. 49-1, pp. 27-8]

    Q. On that day, if you recall, did they have two tugboats working or one tugboat working?
    A. I don't remember.

[Doc. 49-2, pp. 49-50]

    Q. How many times had it [the cable that allegedly injured plaintff] broke before?
    A. I can't remember.

[Doc. 49-2, p. 61]

    Q. And do you remember if it was daytime or nighttime [when the cable previously broke]?
    A. I don't know that.

[Doc. 49-2, p. 64]

    Q. Okay. You and Jeff. If the incident report says that this accident happened at 10:45 a.m., does that sound about right to you?
    A. I can't remember what time it was.

[Doc. 49-3, pp. 69-70]

    Mr. Roy Clements testified at his deposition as follows:

    Q. And do you remember what you said in that statement [to defense attorney Frederick Swaim]?
    A. I'm not sure. It's been quite some time.
    Q. Okay. But did you tell him that you though the accident was Mr. Hunkin's fault?
    A. I'm not sure if I told him that or not.

> Q. Did you think the accident was his fault?
> A. My personal opinion, yeah, kind of. Because there was a disagreement on how it was going to be done. And with us being new to the company with him, it's like he didn't want to listen to our opinions. So in a way, yeah, it could have. It could have been all our faults.
> Q. Well, what other things did you see out there that you thought contributed to the accident?
> A. Prior to the incident?
> Q. Yes.
> A. Like I said again, its been quite some time.

[Doc. 49-10, pp. 56-7][4] Defendant has not explained, and this Court is at a loss to understand, how the witnesses' lack of memory at their depositions was a result of the questions asked by plaintiff's counsel. At best, this lack of memory appears to be due to the passage of time since the accident occurred.

Additionally, the Court finds plaintiff has demonstrated the witnesses recollection on the day of the accident is likely better than at the time of their depositions. *See e.g.* Depo. of Meunier ("Q. Did you know back then? A. Yeah. Well, it was the same day that the incident happened. I'm sure I'm going to remember that.") [Doc. 49-6, p.65 ]; *see also In re Int'l Systems & Controls Corp. Sec. Litig.* at 1240 ("Plaintiff may however, demonstrate undue hardship if the witness cannot recall the events in question...."); *In re Omega Protein Inc.*, 2007 WL 165494, *3 (W.D. La. 2007)("The mere passage of time does not necessarily require the production of witness statements taken after an accident. However, the passage of time is more relevant when the statements at issue were taken within hours of the accident since they are likely to contain information that no deposition could bring out. Further, when a witness to an accident gives a contemporaneous account in a written statement and is later either unavailable to be deposed or provides deposition testimony that is not

---

[4]The Court has by no means listed all instances of "lack of memory" contained in the three depositions cited above.

the substantial equivalent of his statement, such factors weigh in favor of production.")(citations omitted); *Hamilton v. Canal Barge Co., Inc.*, 395 F.Supp. 975, 977 (D.C.La. 1974)(One circumstance where a witness statement may be discoverable occurs when the witness provides "a fresh and contemporaneous account in a written statement while he is available to the party seeking discovery only a substantial time thereafter."); 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2026 (2d ed. 2009)("No one doubts that production should be ordered if the witness has a faulty memory and no longer remembers details of the event. There is now a substantial body of authority that goes beyond this and suggests that statements taken from witnesses at about the time of the occurrence described in them are unique, in that they provide an immediate impression of the facts."); *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 584 (S.D. Tex. 1996)(The transcripts of interviews of persons who witnessed plaintiff's accident were subject to production. Because any statement taken from the witnesses months after the accident would be inferior to their immediate impressions, the transcripts would be discoverable).

As to defendant's argument the statements are protected by the attorney-client privilege, the Court is unpersuaded. As noted above, the attorney-client privilege can extend to communications between corporate employees and counsel if the communication is made at the direction of corporate superiors in order to secure legal advice, and the employees are aware that they are being questioned so that the corporation can obtain legal advice. *Upjohn Co. v. United States*, 101 S.Ct. 677, 685 (1981). The only fact specific argument defendant has made regarding its assertion the statements are privileged is as follows: "[T]he interviews that the Cooper employees gave to undersigned counsel were made in confidence for the purpose of obtaining legal advice. Otherwise, the statements

11

would have been obtained by the Loss Control Director, Byron Borne, who performed an inspection and has already testified in this matter." [Doc. 58-1, pp. 10-11] The foregoing argument, alone, does not establish the statements given to corporate counsel by corporate employees were *confidential communications made for the purpose of obtaining legal advice*, or that the *employees were made aware they were being questioned so that the corporation could obtain legal advice*. Consequently, defendant has failed to carry its burden and show the statements are privileged. *Hodges*, 768 F.2d at 721 ("The burden of demonstrating the applicability of the privilege rests on the party who invokes it.")[5]

In light of the foregoing and following a review of the briefing before this Court, the briefing and depositions provided to the court below, and the well-reasoned opinion of the Magistrate Judge, the Court agrees with the Magistrate Judge and finds plaintiffs have shown they have "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(i) and (ii). However, defendant has additionally made the conclusory assertion that the "witness statements are opinion work product that require stringent protection." [Doc. 58, p.1] Within the supporting memorandum, defendant merely provides basic, hornbook law regarding opinion versus ordinary work product; no fact

---

[5]Moreover, merely having an attorney take a witness statement is not necessarily sufficient, in and of itself (as counsel appears to imply), to give rise to attorney-client privilege *or* to prevent discovery of such a statement by asserting work product protection. As noted, for attorney-client privilege to exist, the statement must be made at the direction of corporate superiors in order to secure legal advice, and the employee must be made aware he or she is being questioned in order for the corporation to obtain legal advice. And although the statements in this matter do constitute work product, work product *is discoverable* where a party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A). The closer in time to the accident that a statement is taken increases the risk the statement will be discoverable, as a fresh and contemporaneous account will, in many cases, be far superior to statements (or depositions) taken months after the accident. *See* cases and source cited *supra* pp. 10-11.

12

specific argument is set forth therein. This Court tends to agree with plaintiffs' counsel when he states:

> Indeed the circumstances and timing of the taking of the statements would suggest it is highly unlikely that counsel for COOPER would have formed legal theories or mental impressions immediately after the accident. Counsel for COOPER appeared on the banks of the Mississippi River to interview the witnesses the very same day the accident occurred. What mental impressions could counsel possibly have at that point?

[Doc. 60, p.20] Additionally, it is noted this lawsuit was not yet filed at the time the witness statements were taken. While the Court recognizes the Magistrate Judge found the statements were obtained "in anticipation of litigation" (and this Court accepts that finding), it is difficult to envision (nor has counsel enlightened the Court) as to how he was able to create any mental impressions, conclusions, opinions, or legal theories so soon after the accident occurred.[6]

Nevertheless, the federal rules are clear - "If the court orders discovery of those [work product] materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B). Accordingly (and out of an abundance of caution), because defense counsel alleges the recorded, unsworn statements of Mr. Morin, Mr. Meunier and Mr. Clements

---

[6]There is no indication in the briefing that defense counsel provided a privilege log in response to the request for production. FED. R. CIV. P. 26(b)(5)(A) requires the following:

> When a party withholds information otherwise discoverable by claiming that the information is ... subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Had a privilege log been provided to counsel and/or the Court, perhaps counsel's assertion that the materials should not be produced because they constitute opinion work product would be clearer to opposing counsel and to this Court.

contain "opinion work product," defense counsel is to submit a transcript of each statement, in its entirety, to the Magistrate Judge within three days of issuance of this Ruling for an *in camera* review. Counsel must ***identify with particularity*** the specific portions of each transcript containing "the mental impressions, conclusions, opinions, or legal theories" of the attorney taking the statements.[7] Thereafter, the Magistrate Judge may take whatever action, if any, he deems necessary to "protect against disclosure of [any such] mental impressions, conclusions, opinions, or legal theories" of Cooper's counsel. In light of the foregoing Ruling, as well as the Ruling by the court below, counsel is hereby placed **ON NOTICE** that should he persist in arguing the entirety of the witness statements should be protected (provided, of course, that the entirety of statements do not, in fact, contain solely counsel's mental impressions, conclusions, opinions, or legal theories - a rather unlikely scenario), rather than identifying **with specificity** any portions containing opinion work product, he is **AT RISK OF THE IMPOSITION OF SANCTIONS**, as such an argument will likely be considered frivolous and a waste of scarce judicial resources.

In light of the foregoing, defendant's motion for a "for a stay of enforcement of the Ruling" is denied as moot.

### Conclusion

Due to the foregoing, the Court AFFIRMS the Magistrate Judge's Ruling in all respects, with the exception of the portion ordering the transcripts of the unsworn recorded statements be produced to plaintiff by a date certain. Rather, that portion of the Ruling is MODIFIED as follows: the

---

[7]While both plaintiffs' counsel and the Magistrate Judge (citing plaintiff counsel's brief) state it is Frederick Swaim who took the witness' statements, it is unclear from defendant's briefing whether it was actually Mr. Swaim who took the statements, or Counselor Jason Waguespack. [*See e.g.* Doc. 49, p.12, 29 (noting "undersigned counsel" obtained the statements; Mr. Waguespack has signed the document, with Mr. Swaim's name appearing immediately thereunder.)]

14

transcripts are to first be submitted by defense counsel to the Magistrate Judge within three days of issuance of this Ruling for an *in camera* review. Counsel must ***identify with particularity*** the specific portions of each transcript containing "the mental impressions, conclusions, opinions, or legal theories" of the attorney taking the statements. Thereafter, the Magistrate Judge may take whatever action, if any, he deems necessary to "protect against disclosure of [any such] mental impressions, conclusions, opinions, or legal theories" of Cooper's counsel.

Additionally, defendant's motion "for a stay of enforcement of the Ruling" [Doc. 58, p.2] is DENIED AS MOOT.

THUS DONE AND SIGNED this 7th day of January, 2010.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE